## HARSHBERGER v. TARRSON et al.
### No. 10081.

United States Court of Appeals
Seventh Circuit.
Oct. 26, 1950.

Alwin F. Pitzner, Edward W. Osann, Jr., Chicago, Ill. (Carlson, Pitzner, Hubbard & Wolfe, Chicago, Ill., of counsel), for appellant.

Albert F. Mecklenburger, Arthur B. Seibold, Jr., Chicago, Ill. (Sidney Neuman, Thiess, Olson & Mecklenburger, Chicago, Ill., of counsel), for appellees.

Before KERNER, DUFFY and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

Plaintiff, owner of certain patents on safety razors, brought suit charging defendants with infringement and with violation of plaintiff's alleged rights under the Fair Trade Act of Illinois, Smith-Hurd's Rev. Stat. Chap. 121½, Secs. 188 to 191 incl. He sought also recovery, as he says, "for grave damage to and impairment of plaintiff's property interest and good will attaching to his inventions and the patents in suit

resulting from the unlawful acts of defendants." The District Court, upon defendants' dual motion for summary judgment and to dismiss the complaint, granted summary judgment against plaintiff upon the charge of infringement and dismissed the complaint as to the other charges. Assigning error as to each of these actions, plaintiff has perfected this appeal.

The District Court filed an extended memorandum opinion, in which the pertinent facts are related, accompanied by adequate discussion of the legal authorities which it thought compelled its decision. Harshberger v. Tarrson, 87 F.Supp. 43. Inasmuch as we agree with what is said in that opinion and it would serve no good purpose to reiterate the facts or to extend the discussion, we incorporate it herein by way of reference and adopt it as a part hereof.

We should, perhaps, give consideration to plaintiff's assertion that the cases upon which the District Court relied, Keeler v. Standard Folding-Bed Co., 157 U.S. 659, 15 S.Ct. 738, 39 L.Ed. 848, Mitchell v. Hawley, 16 Wall. 544, 83 U.S. 544, 21 L.Ed. 322, have been limited in their ultimate effect by the Supreme Court's announcement in General Talking Pictures Corporation v. Western Electric Co., 304 U.S. 175, 546, 58 S.Ct. 849, 82 L.Ed. 1273.

It will be remembered that under the patentee's license to Stahly, the latter became the exclusive licensee for the manufacture and sale of razors embodying the patentable features of plaintiff's patents; that therefor Stahly agreed to pay specified royalties; that the goods here involved had been manufactured while the license was still in full force and effect; that Stahly had failed to pay the royalties as agreed but had consented that the manufacturer who had made the razors for it might pledge the goods for a loan and that the loan was made and the pledged property eventually sold in satisfaction thereof. The District Court held that Stahly had the exclusive right to have the razors manufactured and, under the license agreement, was to pay royalties upon all manufactured, sold or otherwise disposed of by Stahly or by any person acting with its consent; that what had been done was within Stahly's authority under the license agreement and that the razors, therefore, were freed of the monopoly of the patent. It is to avoid this conclusion upon the part of the District Court that plaintiff urges that the last mentioned case is decisive. However, the circumstances and facts involved there are in no wise parallel to those presented here and the opinion makes no announcement of law inconsistent with the District Court's conclusion in this case. There the owner of various patents on vacuum tube amplifiers granted to certain exclusive licensees the right to use the patented equipment in making talking picture equipment; it also granted to others nonexclusive licenses expressly limited to making and selling the amplifiers for private use. One of the non-exclusive licensees sold the patented devices to a talking picture company, knowing that the purchaser would include them in moving picture equipment to be leased to others. Both parties knew of the restrictions in the non-exclusive vendor's license. The court held the restrictions of the vendor's license valid and concluded that the sales made by the non-exclusive licensee were, therefore, without authority from the patent owner, and that both vendor and purchaser were guilty of infringement. It was clear that the non-exclusive licensee had violated the terms of his license by making unauthorized sales; consequently the goods were not free of the patent monopoly. But here the patentee had expressly authorized his exclusive licensee to manufacture, sell and dispose of razors embodying the patentable features, without restriction. The facts, as they appear from the District Court's decision and as we have briefly recounted, show that everything done with regard to the razors was done under and within the authority of Stahly under the terms of its license. Therefore, plaintiff had no right to complain of anything that occurred. It did have a right, of course, to enforce its remedies under the license agreement against Stahly.

We agree with the District Court that no dispute as to material facts was involved. It is wholly immaterial as to whether the manufacturer had knowledge of plaintiff's

patent rights or whether the license agreement was terminated in June 1948 and not renewed, for it appears without dispute that the razors were manufactured during the time it was in full force and effect. Nor is it material that the razors were defectively manufactured, if that be the fact, for Stahly alone could complain of this breach of contract by its manufacturer.

The District Court, having decided that plaintiff had no right to complain of infringement and no rights under the Fair Trade laws of Illinois, held that he could not succeed upon a claim for damages, for there had been no violation of any law by defendants giving life to any cause of action. The court rightfully dismissed the entire complaint.

The judgment is affirmed.